UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JANET RHEINHEIMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-781-PPS-MGG |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Janet Rheinheimer has appealed from an administrative law judge's denial of her applications for Social Security disability insurance benefits and supplemental security income. In doing so, she claims that the ALJ committed four errors which require a reversal of her decision, but I will limit my discussion to one: whether the ALJ erred in analyzing her subjective symptoms, specifically with regard to her financial concerns, her daily activities, and her work history. Because I find that the ALJ erred in failing to properly consider and analyze Rheinheimer's subjective symptoms, I will REVERSE the ALJ's decision and REMAND on this issue.

### Background

Janet Rheinheimer applied for disability insurance benefits and supplemental security income on May 24, 2017, claiming that she was disabled as of May 25, 2016.

[A.R.[1] 15.] Her claims were denied initially and again upon reconsideration. After that, she requested and had a hearing before an Administrative Law Judge who also denied the claim. [A.R. 1.] Rheinheimer now seeks review of that decision.

In the written decision, the ALJ determined that Rheinheimer has the severe impairments of obstructive sleep apnea, lumbar dysfunction, history of chronic fatigue syndrome, fibromyalgia, and obesity. [A.R. 18.] The ALJ also found that Rheinheimer has the non-severe impairments of migraine headaches, left knee bursitis and right knee degenerative joint disease, nuclear cataract of both eyes and dry eye, allergic rhinitis and right hand carpal tunnel syndrome, and bilateral hand degenerative joint disease. *Id.* The ALJ then determined that Rheinheimer did not meet any of the applicable social security listings for disability. [A.R. 20-21.]

When considering Rheinheimer's residual functional capacity (RFC), the ALJ determined that she is capable of performing work at the light level as defined in 20 CFR § 404.1567(b) and 416.967(b). But she can never climb ladders, ropes, or scaffolds. She can never kneel or crawl. She can occasionally climb ramps and stairs, balance, stoop, or crouch. [A.R. 21.] For the sake of brevity, I won't repeat the ALJ's description of the medical evidence included in the written decision. [*See* A.R. 21-23.]

At the administrative hearing, the ALJ posed the RFC and some additional hypothetical questions to a vocational expert (VE) who testified whether such a

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 17. Citations are to the page number in the lower right-hand corner of the A.R.

hypothetical person with Rheinheimer's RFC could likely find gainful employment. The ALJ determined that Rheinheimer is capable of performing her past work as a paralegal. [A.R. 24.] As a result, the ALJ found that Rheinheimer was not disabled within the meaning of the Social Security Act and its regulations.

## Discussion

In a Social Security disability appeal, my role as district court judge is limited. I do not review evidence and determine whether a claimant is disabled and entitled to benefits. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g). The Supreme Court has said that "substantial evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

My review of the ALJ's decision is guided by the principle that while "[t]he ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Given this modest

standard, the review is a light one, but of course I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "[T]he decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

Rheinheimer argues that the ALJ erred in failing to support the RFC with substantial evidence. [DE 19 at 10]. Rheinheimer makes several arguments regarding her RFC, but I will focus on her claim that the ALJ failed to properly analyze her subjective symptoms. [DE 19 at 10-15].

When evaluating a claimant's subjective symptoms, the correct standard is whether the subjective symptoms are reasonably consistent with the objective medical evidence. 20 C.F.R § 404.1529(c)(3). According to the regulations, "any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . ." 20 C.F.R. § 404.1529(c)(3). Additionally, "[y]our symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). This is important to note "[b]ecause symptoms, such as pain, are subjective and difficult to quantify . . . ." 20 C.F.R. § 404.1529(c)(3).

-4-

When an ALJ dismisses a claimant's subjective symptoms, she must follow up with an explanation for the rejection. *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011); *Fanta v. Saul*, 848 F. App'x 655, 659 (7th Cir. 2021) (unpublished) (finding it sufficient that the ALJ dismissed the claimant's subjective symptoms because the ALJ explained they were contrary to statements made to the claimant's doctors). Failing to account for this rejection may impact the ALJ's overall determination. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). An "ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562; 20 C.F.R. § 404.1529(c)(2). An ALJ's evaluation of subjective symptoms is vital to the disposition of the case and the ALJ must explain these conclusions with legally sufficient and specific reasons, supported by substantial evidence. *Villano,* 556 F.3d at 562.

Rheinheimer asserts that the ALJ impermissibly cherry-picked evidence, failed to consider mitigating factors in her conservative treatment plan, and improperly relied on her daily activities and her part time job in dismissing her subjective symptoms.

The ALJ found that the objective medical evidence does not support Rheinheimer's subjective symptoms, as the evidence "fails to document the presence of any impairment or combination of impairments [that] could reasonably [be] expected to result in pain or other symptoms of such a severity or frequency as to preclude the range of work described [in the RFC]." [A.R. 22]. The ALJ noted that despite exhibiting

various tender points, Rheinheimer was not provided any treatment for her fibromyalgia other than counseling. *Id.* The ALJ also stated that on three occasions, clinical examinations noted no acute distress and that Rheinheimer appeared healthy. *Id.* The ALJ further relied on reports of "relatively marginal pain that tends to wax and wane," as well as minimal complaints of pain during a physical therapy consultation. *Id.* The ALJ noted there was no imaging to reveal degenerative defects in her spine or any other significant findings. *Id.* The ALJ also relied on the fact that Rheinheimer only had a few chiropractic and physical therapy visits, which reduced her pain. *Id.*

The ALJ noted that, in general, Rheinheimer's "physical examinations have typically been unremarkable aside from occasional acute findings," and that she has "not generally received the type of medical treatment one would expect for a totally disabled individual." [A.R. 22-23]. The ALJ found that her treatment has been routine and conservative in nature, and there was no evidence of extensive medical treatment since her alleged onset date. [A.R. 23]. The ALJ also relied on Rheinheimer's work status and noted that she lost her job due to layoffs and not because of her impairments. *Id.* The ALJ noted that she has since resumed working part time. *Id.* The ALJ found that there was no objective evidence to support her assertion that she could not work more, as she has not called off work or been disciplined for her performance. *Id.* Finally, the ALJ relied on her "very busy" schedule, including being active in her church, singing in choir, helping care for elderly family members, participating in game nights, and making crafts in finding that her allegations were not supported by the record. *Id.*

Rheinheimer alleges that the ALJ erred in relying on supposed conservative treatment without considering the circumstances surrounding *why* she did not pursue further medical care. "Although a history of sporadic treatment or the failure to follow a treatment can undermine a claimant's [subjective symptoms], an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue,* 675 F.3d 690, 696 (7th Cir. 2012) (citations omitted). An ALJ may need to question a claimant in order to determine why she did not comply with or seek treatment "in a manner consistent with [her] complaints." SSR 16-3p, 2017 WL 5180304, at *9. In considering a claimant's treatment history, the ALJ should consider that a claimant "may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* The ALJ must explain how she considered the claimant's reasons for not pursuing treatment in the evaluation of a claimant's subjective symptoms. *Id.* at 25.

Rheinheimer demonstrated financial need in many areas of the record, which the ALJ did not consider in analyzing her treatment history. As an initial matter, she is on Medicaid, which requires a showing of financial need.[2] [A.R. 615]. Further, while the ALJ noted that water therapy brought about great improvement for Rheinheimer [A.R. 22], Rheinheimer testified that she was not able to continue therapy because her insurance stopped paying for her visits, and that her symptoms returned after therapy ended. [A.R. 56]. She further testified that a particular gap in treatment was due to a

---

[2] https://www.medicaid.gov/medicaid/eligibility/index.html (last visited January 6, 2022).

time where she did not have insurance, and that her symptoms worsened during that period. [A.R. 67]. Other evidence in the record shows that money owed on her house went to collections [A.R. 972], and that she was struggling making payments on her electric bill. [A.R. 818]. There is also evidence from her provider that further psychological testing would likely not be covered by her Medicaid. [A.R. 900]. She also reported in her function report that she is in danger of her electricity being disconnected, and that her gas and phone line have already been disconnected due to lack of payment. [A.R. 361]. Her psychiatric treatment provider noted that she had "severe financial stress." [A.R. 840]. Rheinheimer testified to financial stress keeping her from pursuing treatment, and the medical evidence repeatedly supports her assertion of financial need. The ALJ failed to consider Rheinheimer's financial limitations in relying on her lack of treatment and her otherwise conservative treatment in dismissing her subjective symptoms.

The ALJ further relied on Rheinheimer's daily activities and "very busy" schedule without considering how she completed those activities. [A.R. 23]. The Seventh Circuit has repeatedly instructed ALJs to not place "undue weight" on daily activities when assessing a claimant's subjective symptoms. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Moreover, the ALJ should explain any purported inconsistencies between the claimant's daily activities, subjective complaints, and the medical evidence in the record. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). A rote listing of activities does not cut it. Instead, the ALJ must provide an explanation as to *how* the

-8-

daily activities are inconsistent with a claimant's subjective symptoms. *Nelson v. Colvin*, No. 13 C 2902, 2016 WL 337143, at *6 (N.D. Ill. Jan. 27, 2016) ("The mere listing of daily activities does not establish that a claimant does not suffer disabling pain and is capable of engaging in substantial gainful employment.").

Here, the ALJ does no more than note she is active in her church, sings in the choir, helps care for elderly family members, participates in game nights, and makes crafts. [A.R. 23]. The ALJ failed to discuss which symptoms were inconsistent with the daily activities. More concerningly, the ALJ failed to consider the manner in which Rheinheimer completed her daily activities or otherwise mischaracterized and cherry-picked evidence in the record.

The ALJ cites to three pages in the record to support her findings regarding Rheinheimer's daily activities. One relies on Rheinheimer's reports of "doing game nights for fun." [A.R. 550]. However, the same medical note reported that her current depression symptoms interfere with her ability to go to family functions, take care of her house, or "to do work she needs to do for income." [A.R. 551]. There is no other evidence in the record that Rheinheimer frequently participates in "game nights." In other words, the ALJ plucked a single notation in a treatment note without considering the other evidence in the record. This is classic cherry-picking. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ also relies on a progress note from her psychiatric center, noting that she attends community choir, make cards, and "has activities at church." [A.R. 855]. However, while Rheinheimer lists card making and crafts as

hobbies in her function report, she notes that she only does her hobbies "off and on," as she sometimes has "no interest to do any activity." [A.R. 358]. She stated that depression and pain levels play a large part in her ability to participate in her hobbies. [*Id.*]. She also reported in her function report that she is limited in her church going and church activities. [*Id.*]. Rheinheimer reported that she often has little motivation or desire to complete personal hygiene tasks, is limited in her ability to complete housework due to pain, and that her activities vary week to week depending on her pain, motivation, and stamina. [A.R. 324-27]. The ALJ again cherry-picked evidence that supported his opinion while ignoring substantial evidence to the contrary.

Furthermore, while Rheinheimer reports a "busy schedule," with multiple activities at her disposal, it is apparent that she is encouraged to participate in structured activities by her mental health treatment providers as a means of controlling her anxiety. [A.R. 818]. Her mental health treatment provider suggested she schedule activities on the weekend to help with structure, and while Rheinheimer may have added these activities to her schedule, her testimony and function report indicate that she struggles with completing the tasks or attending activities due to her impairments. [A.R. 819]. Moreover, she reported in March 2019 that she struggled with motivation and "not being able to address important areas in her life due to her symptoms." [A.R. 957]. She regularly reported sleeping 15-16 hours in a row on the weekend, as well as excessive sleeping when symptomatic. [A.R. 58, 818, 839, 850, 967]. She also testified to napping every day for one to two hours at a time, including after work. [A.R. 68]. In

sum, the ALJ failed to consider Rheinheimer's financial distress in analyzing her subjective symptoms and impermissibly cherry-picked evidence that supported her opinion without considering evidence to the contrary.

The ALJ also relied on Rheinheimer's part time work (two eight-hour days per week) in dismissing her subjective symptoms. The ALJ noted that she stopped working full-time due to a layoff in 2015, and that there is no objective evidence to support her assertion that she lacks the physical energy to work more than part-time. [A.R. 23]. The ALJ also noted that she has not needed to call off work or been disciplined for her performance at work. *Id.* As an initial matter, the medical record does not indicate why Rheinheimer was laid off, only that she reported at one appointment that she was laid off in 2015. [A.R. 557]. Rheinheimer may have been laid off due to any number of reasons, including performance, but the ALJ did not ask Rheinheimer about why she was laid off at the hearing, and there is no evidence of whether she was laid off due to her performance or for other reasons. [A.R. 51]. Moreover, even if she was laid off due to other reasons in 2015, Rheinheimer's alleged onset date is not until May 25, 2016. [DE 17 at 22]. The ALJ cannot look to Plaintiff's layoff in 2015 to analyze her subjective symptoms after May 25, 2016. This is illogical and fails to explain how her prior work experience shows her later symptoms were less severe than she alleges.

The ALJ then observed that Rheinheimer is capable of working part time, that she has never called off, and that she has never been disciplined at work. [A.R. 23]. However, the ALJ ignored Rheinheimer's testimony that she is regularly late to work

-11-

due to struggles getting up and getting ready in the morning. [A.R. 70]. She also testified that she has had to tell her job that she cannot complete certain projects on a given day due to anxiety and stress. [A.R. 72]. She testified that she frequently misplaces items, but that her employer is generally unconcerned about this, as she is "able to find the stuff finally and get the job done." [A.R. 73]. She stated that she has never completely lost something that caused an issue at the company, but that she regularly misplaces things temporarily. [*Id.*]. The ALJ failed to consider that Rheinheimer was still having difficulties at her part-time job, even if she was not disciplined due to an understanding employer.

Furthermore, while the ALJ found that there was no objective evidence to support her assertion that she could not work more than part time, Rheinheimer suffers from fibromyalgia. The severity of fibromyalgia often cannot be assessed objectively and is instead assessed based on a claimant's subjective reporting of symptoms. *See* SSR 12-2p, 2012 WL 3104869, at *6 ("Widespread pain and other symptoms associated with [fibromyalgia], such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories."); *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment."); *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (finding an ALJ may not reject a claimant's subjective reports of pain from fibromyalgia solely because there is no objective medical evidence supporting it).

Finally, an ability to work part time does not demonstrate an ability to do full-time work. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[A] claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms."). On the contrary, a person in desperate financial circumstances may force herself to work due to financial need. *See Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) ("A desperate person might force herself to work—or in this case, certify that she is able to work—but that does not necessarily mean she is not disabled.") (citations omitted); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working.") (citations omitted).

As discussed above, Rheinheimer showed significant financial need and distress. It is an error to rely on her ability to work part time in dismissing her subjective symptoms without adequate analysis of why she may make continued attempts to work. Moreover, Rheinheimer's testimony indicates that her employer accommodated her by allowing her to come in late frequently without discipline. The ALJ did not consider these factors in discussing her ability to work part-time. Without any discussion of Rheinheimer's financial difficulties or of the accommodations allowed by her employer, I cannot determine that the ALJ properly considered her ability to work

-13-

part-time in analyzing her subjective symptoms.

In sum, the ALJ erred in analyzing Rheinheimer's subjective symptoms. On remand, the ALJ should properly analyze her subjective symptoms, specifically with regard to her financial situation, her daily activities, and her work history. Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Rheinheimer. She can raise those issues directly with the ALJ on remand.

## Conclusion

For the foregoing reasons, the decision of the ALJ denying Janet Rheinheimer's application for Social Security disability benefits is REVERSED and REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: January 18, 2022.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT